

# IN THE
# TENTH COURT OF APPEALS

### No. 10-19-00436-CR

**CURTIS LEWIS BROWN,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 19th District Court
McLennan County, Texas
Trial Court No. 2017-165-C1**

## MEMORANDUM OPINION

Curtis Lewis Brown was charged with evading arrest or detention in a vehicle. TEX. PENAL CODE § 38.04 (b)(2)(A). Brown pled guilty, without a recommendation as to punishment, and the trial court deferred an adjudication of guilt and placed Brown on community supervision-deferred adjudication for five years.

A year later, Brown pled true, again without a recommendation as to punishment, to 13 alleged violations of his community supervision-deferred adjudication. The trial court adjudicated Brown guilty and sentenced Brown to 10 years in prison. The trial court suspended Brown's sentence and placed him on community supervision-probation for 10 years.

Approximately six months later, Brown's conditions of community supervision-probation were amended. Then, approximately 6 months after the amendment, Brown pled true to 12 alleged violations of his community supervision-probation. The trial court revoked Brown's community supervision-probation and sentenced him to nine years in prison. Brown timely filed a motion for new trial which, after a hearing, the trial court denied.

Because the trial court did not abuse its discretion in denying Brown's motion for new trial, the trial court did not commit judicial vindictiveness, Brown's estoppel issue was inadequately briefed, and Brown's plea of true was not involuntary, the trial court's judgment is affirmed.

APPELLATE PROCEDURAL BACKGROUND

An attorney was appointed to represent Brown on appeal. The attorney filed a brief on Brown's behalf, raising three issues. The State filed its brief in response. While the appeal was pending, the attorney representing Brown died. Another attorney was appointed and given the opportunity to accept the appellant's brief already on file with the Court or submit a supplemental brief. New counsel chose to file a supplemental brief, also raising three issues.

The issues in the initial brief will be referred to as "Original Issues," and the issues in the subsequent brief will be referred to as "Supplemental Issues."

ORIGINAL AND SUPPLEMENTAL ISSUE ONE

In both briefs, Brown raises the same first issue: that the trial court abused its discretion in denying Brown's motion for new trial by denying Brown the benefit of his "plea bargain." We address both issues together.

*Motion for New Trial Standard of Review*

We review a trial court's denial of a motion for new trial for an abuse of discretion, and we will only reverse if the trial court's decision was "clearly erroneous and arbitrary." *Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012); *Horne v. State*, 554 S.W.3d 809, 813 (Tex. App.—Waco 2018, pet. ref'd). We cannot substitute our own judgment for that of the trial court and must uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Riley*, 378 S.W.3d at 457; *Horne*, 554 S.W.3d at 813. A trial court will not generally abuse its discretion in granting a motion for new trial if the defendant: (1) articulates a valid legal claim in his motion for new trial; (2) produces evidence or points to evidence in the trial record that substantiated his legal claim; and (3) shows prejudice to his substantial rights under the standards in Rule 44.2 of the Texas Rules of Appellate Procedure. *State v. Herndon*, 215 S.W.3d 901, 909 (Tex. Crim. App. 2007).

*Application*

In both issues, Brown contends he and the State reached a plea bargain agreement whereby Brown agreed to a term of 45 to 125 days in an Intermediate Sanction Facility (ISF) as an amended condition of community supervision-probation. Within days of the trial court signing the amended order which included that condition, Brown asserts he was informed he would not be sent to ISF. Brown argues the trial court abused its discretion in denying Brown's motion for new trial, filed after Brown's community supervision-probation was ultimately revoked, because the State breached the "plea agreement," and, Brown's argument continues, he should receive the benefit of the bargain, that is, being continued on community supervision-probation and attending ISF. We disagree with Brown.

Prior to the alleged ISF agreement, the State had filed a motion to revoke Brown's community supervision-probation. Without a hearing, but more importantly without Brown having to plead true to any violation alleged in the motion to revoke, the trial court signed an order amending the conditions of community supervision-probation. Three days later, the State filed a motion to withdraw its motion to revoke which the trial court granted.

While the amended order may have been a result of an agreement between the State and Brown, such agreement was not a plea agreement in the traditional sense and cannot be evaluated as such. Revocation proceedings are essentially administrative and do not involve the same panoply of rights and considerations applicable to a formal criminal trial. *Chambers v. State*, 700 S.W.2d 597, 598-99 (Tex. Crim. App. 1985), *overruled on other grounds by Reynolds v. State*, 4 S.W.3d 13 (Tex. Crim. App. 1999). Further, the agreement did not dispose of Brown's criminal charge. *See Santobello v. New York*, 404 U.S. 257, 260, 92 S. Ct. 495, 498 (1971) ("The disposition of *criminal charges* by agreement between the prosecutor and the accused, sometimes loosely called "plea bargaining,"…") (emphasis added). At most, it converted the motion to revoke to a motion to modify, and Brown agreed to the modification. Finally, binding plea bargain agreements in revocation proceedings have not been authorized by the legislature. *Gutierrez v. State*, 108 S.W.3d 304, 309-10 (Tex. Crim. App. 2003) ("in the context of revocation proceedings, the legislature has not authorized binding plea agreements, has not required the court to inquire as to the existence of a plea agreement or admonish the defendant pursuant to 26.13, and has not provided for withdrawal of a plea after sentencing."). Thus, there was no "plea bargain agreement."

Moreover, even if there was such an agreement that could be considered a binding agreement, plea bargain or otherwise, such an agreement would, at most, only estop the State from moving to revoke Brown's community supervision-probation on the basis that he failed to comply with/complete ISF. It would not prevent the State from seeking revocation on any other alleged violation, including those upon which the prior motion to revoke was based. *See Winkle v. State*, 718 S.W.2d 306, 307-08 (Tex. App.—Dallas 1986, no pet.); *see also Bigham v. State*, 233 S.W.3d 118, 121 (Tex. App.—Texarkana 2007, no pet.).

Accordingly, the trial court did not abuse its discretion in denying Brown's motion for new trial on this basis.

Brown's original and supplemental first issues are overruled.

**REMAINING ORIGINAL ISSUES**

We now discuss Brown's remaining original issues.

*Vindictive Re-sentencing*

Brown complains in his second original issue that the trial court committed "judicial vindictiveness" when it revoked Brown's community supervision-probation and sentenced Brown to nine years in prison after it had modified Brown's community supervision-probation to allow Brown to attend ISF. Brown relies on *Ex parte Miller*, 330 S.W.3d 610 (Tex. Crim. App. 2010) and *Alabama v. Smith*, 490 U.S. 794, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989) to support his issue. However, those cases do not stand for the proposition asserted by Brown. Rather, they stand for the general proposition that a trial court may not assess a greater punishment after a new trial following a successful appeal without good cause. Brown has never appealed any of his judgments or modifications, if he could have, and has not been "re-sentenced." Further, he has not provided us with

case authority that extends this proposition to a revocation proceeding, and we decline to do so.

Accordingly, Brown's second original issue is overruled.

*Disproportionate Sentence*

In his third original issue, Brown claims his nine-year sentence is grossly disproportionate to the offense for which he was convicted, and consequently, the trial court abused its discretion in denying Brown's motion for new trial.

A disproportionate-sentence claim must be preserved for appellate review either by objecting when the sentence is imposed or by raising the claim in a timely-filed motion for new trial. TEX. R. APP. P. 33.1(a)(1); *Castaneda v. State*, 135 S.W.3d 719, 723 (Tex. Crim. App. 2003) (cruel and unusual punishment claims may be waived); *see Noland v. State*, 264 S.W.3d 144, 151 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (to preserve gross disproportionate claim, defendant must present timely and specific request, objection, or motion). A review of the record shows that Brown did not raise his complaint at the time the sentence was imposed or in his motion for new trial. However, he did argue the disproportionality of the sentence, without objection by the State, at the hearing on his motion for new trial. Consequently, we conclude that Brown has preserved this complaint for our review.[1]

When a sentence falls within the range of punishment provided by the legislature, it is generally not grossly disproportionate to the offense committed. *State v. Simpson*, 488 S.W.3d 318, 323 (Tex. Crim. App. 2016). Brown's nine-year sentence is within the

---

[1] The State could have objected to Brown's discussion as an untimely amendment to the motion for new trial and insisted that the trial court rule only upon the timely motion for new trial as originally filed. *See State v. Moore*, 225 S.W.3d 556, 570 (Tex. Crim. App. 2007). It did not.

statutory range of punishment for the offense for which he was convicted.  *See* TEX. PENAL CODE § 12.34 (punishment for third degree felony is two to ten years in prison); *see also* TEX. PENAL CODE § 38.04 (b)(2)(A) (offense is a third-degree felony).  However, even if a sentence falls within the statutory punishment range, the sentence may violate the Eighth Amendment to the United States Constitution if the sentence is grossly disproportionate to the offense or to sentences in other similar offenses.  *See Solem v. Helm*, 463 U.S. 277, 289-90, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983).  To determine whether a sentence for a term of years is grossly disproportionate for a particular defendant's offense, we consider the severity of the sentence in light of the harm caused or threatened to the victim, the culpability of the offender, and the offender's prior adjudicated and unadjudicated offenses.  *State v. Simpson*, 488 S.W.3d 318, 323 (Tex. Crim. App. 2016); *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992) (noting that the Supreme Court's holding in *Harmelin v. Michigan*, 501 U.S. 957, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991) modified the gross-disproportionality test previously set out in *Solem*, 463 U.S. 277, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983)).  In the rare case in which this analysis leads to an inference of gross disproportionality, we then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions.  *Graham v. Florida*, 560 U.S. 48, 60, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010).  If this comparative analysis confirms that the sentence is grossly disproportionate, the sentence is cruel and unusual.  *Id*.

Brown was convicted of evading detention or arrest in a vehicle.  He pled guilty.  Other than that information, there is nothing in the record regarding any harm, or lack thereof, caused or threatened to any potential victim or regarding Brown's prior

adjudicated and unadjudicated offenses, if any. There was also no evidence comparing Brown's sentence in this case to those sentenced for the same offense to confirm gross disproportionality. Instead, Brown presented evidence and argument that his sentence was too harsh, not that it was unconstitutional. *See State v. Simpson*, 488 S.W.3d 318, 324 (Tex. Crim. App. 2016) (evidence about defendant's minimal role in the offense, age and circumstances of the prior offenses, need for drug treatment, employment history relevant to the trial court's punishment decision, not that sentence was unconstitutional.; *see also State v. Zalman*, 400 S.W.3d 590 (Tex. Crim. App. 2013). This is not enough. *See id*.

Accordingly, the trial court did not abuse its discretion in denying Brown's motion for new trial, and Brown's original third issue is overruled.

### REMAINING SUPPLEMENTAL ISSUES

We now discuss Brown's remaining supplemental issues.

### *Estoppel*

In his second supplemental issue, Brown argues the trial court erred in revoking Brown's community supervision-probation and consequently abused its discretion in denying Brown's motion for new trial because the trial court and the State were estopped from pursuing revocation based on a new offense known by law enforcement at the time the previous agreement to amend the conditions of community supervision-probation was accepted. In other words, he argues estoppel applies because law enforcement's knowledge that Brown was arrested on a new offense was imputed to the prosecutor which was then imputed to the trial court.

Brown provides no authority for the proposition that knowledge of a law

enforcement agency is ultimately, through the State, imputed to the trial court. Thus, this argument is improperly briefed and presents nothing for review. *See* TEX. R. APP. P. 38.1(i); *Lucio v. State*, 351 S.W.3d 878, 896 (Tex. Crim. App. 2011); *see also Neville v. State*, 622 S.W.3d 99, 104 (Tex. App.—Waco 2020, no pet.). Even if, for some reason, the trial court could be estopped from revoking Brown's community supervision-probation on the new offense, that estoppel would not prevent the State from seeking or the trial court from granting a revocation on any other alleged violation, including those upon which the prior motion to revoke, which in this case was withdrawn by the State, was based. *See Winkle v. State*, 718 S.W.2d 306, 307-08 (Tex. App.—Dallas 1986, no pet.); *see also Bigham v. State*, 233 S.W.3d 118, 121 (Tex. App.—Texarkana 2007, no pet.). Proof of a single violation will support revocation. *Garcia v. State*, 387 S.W.3d 20, 26 (Tex. Crim. App. 2012). Brown pled true to all 12 violations alleged by the State; thus, any one of those support the trial court's order.

Brown also argues that the trial court erred in revoking Brown's community supervision-probation in the face of prosecutorial misconduct. Brown provides no authority regarding what constitutes prosecutorial misconduct or how the State committed misconduct pursuant to those authorities. This argument is also improperly briefed and presents noting for review. *See* TEX. R. APP. P. 38.1(i); *Lucio v. State*, 351 S.W.3d 878, 896 (Tex. Crim. App. 2011); *see also Neville v. State*, 622 S.W.3d 99, 104 (Tex. App.—Waco 2020, no pet.).

Brown's second supplemental issue is overruled.

### Voluntary Plea

In this third supplemental issue, Brown contends his plea of true to the State's

motion to revoke was involuntary because he: 1) did not have sufficient awareness of the consequence of his plea; 2) did not have sufficient awareness of the relevant circumstances surrounding the plea; and 3) did not possess an understanding of the law in relation to the facts.

As a matter of constitutional law, a plea of "true" to having violated a term or condition of community supervision must be voluntarily made. *See LeBlanc v. State*, 768 S.W.2d 881, 882 (Tex. App. — Beaumont 1995, no pet.).[2] Due process requires a guilty plea be undertaken voluntarily, with sufficient awareness of the consequences of the plea. *Ex parte Palmberg*, 491 S.W.3d 804, 807 (Tex. Crim. App. 2016). A defendant must have sufficient awareness of the relevant circumstances and possess an understanding of the law in relation to the facts surrounding the plea. *Id.*; *see also Ex parte Broussard*, 517 S.W.3d 814, 817 (Tex. Crim. App. 2017). To determine whether a defendant's "awareness" was "sufficient" at the time of his plea, a reviewing court looks to whether the plea was a voluntary and intelligent choice among the alternative courses of action open to the defendant. *Id.*; *State v. Guerrero*, 400 S.W.3d 576, 588 (Tex. Crim. App. 2013). A defendant need not, however, have a comprehensive awareness of the specific impact his plea may have; sufficient awareness does not require complete knowledge of the prosecution's case. *See Palmberg*, 491 S.W.3d at 807; *see also Ex parte Broussard*, 517 S.W.3d 814, 817 (Tex. Crim. App. 2017).

---

[2] The mandatory, statutory admonitions found in article 26.13 of the Code of Criminal Procedure, however, do not apply to a plea of "true" entered in a community supervision revocation proceeding. *Harris v. State*, 505 S.W.2d 576, 578 (Tex. Crim. App. 1974); *see also Gutierrez v. State*, 108 S.W.3d 304, 309-10 (Tex. Crim. App. 2003).

*Awareness--Consequences of Plea*

Brown first argues that he did not have a sufficient awareness that the consequence of his plea would be a nine-year sentence. Brown asserts that he did not understand he was going to be sentenced to nine years, and adamantly opposed a nine-year sentence when he had previously been given ISF.

At the revocation hearing, the trial court initially reviewed the history of Brown's case, noting that in 2017, Brown pled guilty to evading arrest or detention with a vehicle and was sentenced to 10 years in prison, probated for 10 years. When asked by the trial court, Brown acknowledged that the State had filed a motion to revoke Brown's community supervision-probation, accusing him of 12 violations of the terms and conditions of his probation. Brown also waived the reading of the motion to revoke. When asked how he wanted to plead, Brown pled true to each violation. He denied pleading true due to any threats or force used against him or any promises made to him. He agreed that he understood the State would not have to do anything else to prove Brown violated his probation. With that understanding, he continued to plead true to each violation, and the trial court accepted his plea.

After the court accepted the plea, the State informed the court that it was "offering"[3] nine years in prison. The trial court remarked that nine years was less than the original sentence. Brown's counsel understood what the offer was, but when the trial court asked Brown if he understood that the "agreement"[4] was nine years, Brown replied, no. Brown immediately continued, "That's what they want me to sign, but I ain't signing

---

[3] A word used by the State to describe its recommendation to the trial court.

[4] A word used by the trial court to describe the State's recommendation of nine years.

my life for no nine years."

Counsel for Brown clarified with the trial court that Brown wanted to testify regarding sentencing. After admonishments by the trial court, Brown took the stand. He agreed with counsel that they had talked and that he wanted to ask the court to assess a lesser punishment. Brown then explained that he had first been given ISF but then he "got into it with somebody in the Highway 6" jail and "[y]ou all took my ISF, and they're wanting to give me nine years….that's messed up." Brown continued to express his displeasure with ISF being taken away and nine years being "offered." The trial court reminded Brown, and Brown understood, that his original sentence for the offense was 10 years and that the State was recommending a year less than what the trial court was going to give him. Brown was still not pleased with either option.

Brown argues that because the discussion about the sentence and his questions about ISF occurred after his entry of his plea of true, his plea was involuntary. We disagree with Brown. The record reflects that Brown knew the State alleged violations of his probation, pled true to those violations, and was not forced, threatened, or promised anything to plead true. He knew his initial sentence was for 10 years, and he knew the State was now recommending nine years. He was not surprised at the State's recommendation: "That's what they want me to sign, but I ain't signing my life for no nine years." He was allowed to testify in order to complain about the recommendation and inquire about why he could not complete ISF. Simply because Brown did not like the State's recommendation and did not want the 10 years he was initially sentenced to does not mean he did not understand the consequences of his plea.

*Awareness--Relevant Circumstances*

Brown next argues that he did not have sufficient awareness of the circumstances surrounding his plea because he believed he was receiving ISF or was only asking questions regarding why he did not receive ISF. In his brief, Brown presents and relies on a quoted portion of an exchange between Brown and the trial court to support his argument:

THE DEFENDANT: So what was the reason for my ISF to get took?**. . .**

THE COURT: Well, what did you think I was going to do to you?

THE DEFENDANT: I didn't know. I just want to understand why they
took ISF 90 days to turn into years, though.

This quoted portion does not support Brown's argument.

We first note that Brown's quote is a misrepresentation of the exchange between Brown and the trial court because, with an ellipses, Brown omits 16 lines in the record between Brown's question and the trial court's answer. The following passage is the actual exchange:

THE DEFENDANT: So what was the reason for my ISF to get took?

THE COURT: Look, I don't know anything about ISF. I don't do -- I don't
do plea bargaining. When I got your violation report and I read all of this,
I'm the one -- well, first, your -- your plea bargain agreement called for you
to do ten years TDC. That was the agreement. You understand that?

THE DEFENDANT: Yeah, I understand that --

THE COURT: Well --

THE DEFENDANT: -- and it just --

THE COURT: -- and they're offering --they're offering you a year less than
what I was going to do and what -- and what your plea bargain agreement
called for.

THE DEFENDANT: It's funny that I'm in the 19th District, and it's 2019, the 9th month and the 9th day, and they want to give me nine years and play with me.

THE COURT: Well, what did you think I was going to do to you?

THE DEFENDANT: I didn't know. I just want to understand why they took ISF 90 days to turn into years, though.

THE COURT: That's not the question to ask me

The trial court's question, "what did you think I was going to do to you," was in response to Brown's comment that "they want to give me nine years and play with me." It was not in response to Brown's question about why ISF was taken away from him.

We also note that the three lines quoted by Brown are taken out of context in the sentencing portion of the revocation hearing. The full exchange between the quoted question and the quoted answer was just a part of Brown's testimony/conversation with the trial court on sentencing. And after reviewing the entire hearing, the record does not show that Brown believed he was there to receive ISF or to only get answers as to why he did not receive ISF.

Accordingly, Brown had sufficient awareness of the circumstances surrounding his plea.

### Understanding — Law in relation to Facts Surrounding Plea

Brown further asserts his plea was involuntary because he did not understand that by pleading true, he waived the right to have the State prove the allegations against him. This particular voluntariness factor concerns knowledge of the State's case, meaning the evidence against Brown, not whether Brown knew the State did not have to prove its case once Brown pled true. *See Ex parte Broussard*, 517 S.W.3d 814, 818 (Tex. Crim. App. 2017) ("The correct standard is 'whether [the defendant] was aware of sufficient facts—

including an awareness that there are or may be facts that he does not yet know—to make an informed and voluntary plea.' If a known fact changes after the plea—for example, a key witness dies—the defendant is not entitled to withdraw his plea. In the same way, if a known unknown is discovered to be different than the defendant estimated, it does not necessarily entitle him to relief from his agreement with the State because his estimation turned out to be wrong.").

But even if Brown's alleged lack of understanding that the State did not have to prove its case after Brown pled true would be considered in a voluntariness review, Brown was warned before the court accepted Brown's plea that the State would not have to prove anything once Brown pled true. Brown acknowledged he understood and still wanted to plead true. Simply because Brown found out later during sentencing that the State would not have to prove Brown participated in an incident that occurred at the jail, an incident that was not one of the 12 violations to which Brown pled true, did not make his plea involuntary.

### Conclusion

After reviewing the record, and because Brown's necessary awareness and understanding were sufficient at the time of his plea, we find Brown's plea was voluntary. His third supplemental issue is overruled.

### CONCLUSION

Having overruled each original and supplemental issue raised in this appeal, we affirm the trial court's judgment.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
      Justice Johnson, and
      Justice Smith
Affirmed
Opinion delivered and filed March 16, 2022
Do not publish
[CR25]

